2014 IL App (3d) 090464

Opinion filed January 23, 2014

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2014

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit Will County, Illinois, |
| Plaintiff-Appellee, | ) ) ) | Appeal Nos. 3-09-0464 & 3-10-0802 |
| v. | ) ) ) | Circuit No. 08-CF-2481 |
| JORGE A. GUZMAN, | ) ) | The Honorable Richard C. Schoenstedt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice Holdridge specially concurred, with opinion.
Justice McDade dissented, with opinion.

**OPINION**

¶ 1    Defendant Jorge Guzman was indicted for the offense of aggravated possession of stolen

firearms (720 ILCS 5/16-16.1(a)(1) (West 2008)) and entered a negotiated guilty plea.  On appeal,

defendant argues that the trial court erred in denying his motion to withdraw his guilty plea because

he was not informed by the trial court or trial counsel of potential immigration consequences of his

conviction (No. 3-09-0464).  He also appeals from the dismissal of his postconviction petition,

claiming that we should remand for further proceedings because postconviction counsel failed to

include allegations that defendant would not have pled guilty if he had been properly informed of the immigration consequences (No. 3-10-0802). We reverse the order denying defendant's motion to withdraw his plea and remand for further proceedings in appeal No. 3-09-0464. We dismiss appeal No. 3-10-0802.

¶ 2                                   BACKGROUND

¶ 3     At the plea hearing, the State provided a factual basis in which it was shown that defendant was in possession of stolen firearms. The trial court then asked defendant, "[I]s that what happened?" Defendant responded, "[N]ot really." The court recessed to allow defendant to talk to counsel. When the hearing continued, the court asked if defendant agreed to the provided factual basis. Defendant said that he did and that he was mistaken in his earlier answer. The court accepted defendant's plea.

¶ 4     The case then proceeded directly to sentencing. Prior to rendering the sentence, the trial court asked defendant if he was a United States citizen, and defendant stated that he was a resident. Specifically, the following discussion took place:

    "THE COURT: Is he a U.S. citizen?

    DEFENDANT: Yes, sir.

    THE COURT: You are?

    DEFENDANT: I'm sorry. I'm a permanent legal resident."

¶ 5     The court sentenced defendant to four years' imprisonment with the recommendation that he be placed in the impact incarceration program.

¶ 6     On March 6, 2009, defendant filed a motion to withdraw his guilty plea. The written motion contained no arguments in support of his request. At the hearing, counsel argued that defendant's

2

guilty plea was involuntary because the trial court failed to admonish him under section 113-8 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-8 (West 2008)) of the legal immigration consequences he faced if he pled guilty:

"MS. TISDALE [defense counsel]: *** [T]he language of 725 ILCS 5/113-A [*sic*], is that if you are not a citizen of the United state, [*sic*] you're hereby advised that the -- that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, your Honor. And that admonishment was not given to Mr. Guzman.

Your Honor, it's your Honor's discretion as to whether he should be allowed to withdraw his plea of guilty or not. And seeing as though both of the cases that have been presented to your Honor, it isn't clear as to what the interpretation of that statute actually is. One case thinks it's instructionary, and another case thinks it's mandatory.

I would ask that Mr. Guzman be allowed to withdraw his plea of guilty."

The court denied defendant's motion after finding that the admonishments were directory, not mandatory. Defendant filed a notice of appeal from that order on June 11, 2009 (No. 3-09-0464).

¶ 7     On appeal, defendant argued that the trial court erred in failing to inform him of the possible immigration consequences of his guilty plea under section 113-8 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/113-8 (West 2008)) and that trial counsel was ineffective for the failing to inform him of those same consequences. On December 20, 2011, we reversed the trial court's decision as to the constitutional argument and found that trial court's failure to inform defendant as to the immigration consequences of his plea rendered his plea involuntary in light of *Padilla v.*

3

*Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010). *People v. Guzman*, 2011 IL App (3d) 090464 (withdrawn Nov. 27, 2012).

¶ 8    Meanwhile, on July 12, 2010, defendant, through private counsel, filed a petition to vacate the judgment of conviction pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401(a) (West 2010)).  The petition alleged that neither the trial court nor trial counsel advised defendant as to the potential deportation consequences of his plea and that removal proceedings against defendant had been initiated as a result of his plea.  The petition further alleged that an attorney's failure to advise a client of the immigration consequences of a guilty plea constituted ineffective assistance of counsel.

¶ 9    The trial court dismissed the petition, noting that claims of ineffective assistance of counsel are not cognizable in section 2-1401 petitions.  The court granted counsel leave to file a postconviction petition.

¶ 10    That same day, counsel filed a petition for postconviction relief alleging that (1) neither the trial court nor trial counsel informed defendant of the immigration consequences of his plea, (2) removal proceedings against defendant had begun as a result of the plea, (3) trial counsel's failure to advise defendant of the immigration consequences constituted ineffective assistance, and (4) defendant therefore did not enter his plea knowingly or voluntarily.  The State filed a motion to dismiss claiming, among other things, that the petition lacked the necessary evidentiary affidavits in support of defendant's claims.

¶ 11    At the postconviction hearing, defense counsel presented the court with an affidavit from defendant stating that the statements in the petition were true and accurate and that neither the trial court nor defendant's attorney advised defendant that he might be deported if he pled guilty to the

4

felony charge.

¶ 12    On October 7, 2010, the court denied the petition, finding that there was no evidence in the record that defendant would have gone to trial had he been informed of the potential immigration consequences of his plea. Defendant filed a notice of appeal from that order on October 8, 2010 (No. 3-10-0802).

¶ 13    On March 28, 2012, the Illinois Supreme Court allowed the State's petition for leave to appeal in case No. 3-09-0464. After receiving briefs from both parties, the supreme court remanded the case to us and directed us to consider whether the trial court's failure to admonish defendant pursuant to section 113-8 of the Code also should result in the defendant being allowed to withdraw his guilty plea. *People v. Guzman*, No. 113730 (Oct. 12, 2012). In its supervisory order, the supreme court stated that "[t]he appellate court may, in its discretion, choose to consolidate this appeal on remand with the defendant's appeal of the dismissal of [his] postconviction petition, currently pending in the Appellate Court as People v. Guzman, No. 3-10–802." On the supreme court's advice, we consolidated appeal Nos. 3-09-0464 and 3-10-0802 and set a schedule for supplemental briefing by the parties. We also entered a minute order withdrawing our original opinion.

¶ 14    On appeal from case No. 3-09-0464, defendant now contends that (1) his motion to withdraw his guilty plea should have been granted because the trial court failed to admonish him of the possible immigration consequences of his guilty plea pursuant to section 113-8 of the Code, and (2) his motion to withdraw should have been granted because trial counsel failed to inform him of the potential effect of his conviction, as required under *Padilla*, 559 U.S. 356, 130 S. Ct. 1473. On appeal from case No. 3-10-0802, defendant argues that postconviction counsel's assistance was

unreasonable because counsel failed to submit an appropriate affidavit from defendant, never argued that there was a viable defense, failed to move to file a successive petition, and failed to withdraw the notice of appeal filed on October 8, 2010, before submitting additional evidence.

¶ 15                                    APPEAL NO. 3-09-0464

¶ 16                      I.  Failure to Admonish Under Section 113-8

¶ 17                              A. Involuntary Guilty Plea

¶ 18   Defendant first argues that the trial court's failure to advise him in accordance with section 113-8 of the Code, concerning the potential effect of a guilty plea and conviction, renders his guilty plea involuntary.  A trial court's decision on a motion to withdraw a guilty plea is reviewed under the abuse of discretion standard.  *People v. Pullen*, 192 Ill. 2d 36, 39-40 (2000).

¶ 19   Section 113-8 provides:

> "Before the acceptance of a plea of guilty, guilty but mentally
> ill, or nolo contendere to a misdemeanor or felony offense, the court
> shall give the following advisement to the defendant in open court:
> 'If you are not a citizen of the United States, you are hereby
> advised that conviction of the offense for which you have been
> charged may have the consequences of deportation, exclusion from
> admission to the United States, or denial of naturalization under the
> laws of the United States.' "  725 ILCS 5/113-8 (West 2008).

¶ 20   Here, the trial court found the above admonishments to be directory, as opposed to mandatory.  The supreme court addressed this question in *People v. Delvillar*, 235 Ill. 2d 507 (2009). Specifically, the court stated that immigration consequences are collateral consequences.  As such,

6

the failure to admonish a defendant of potential immigration consequences does not affect the voluntariness of the plea. *Delvillar*, 235 Ill. 2d at 521-22.

¶ 21　At the hearing on defendant's motion, defendant's sole basis for requesting relief was grounded in the incorrect belief that the section 113-8 admonishments were mandatory. Defense counsel argued that the language of section 113-8 advised that a defendant should be admonished as to the consequences of deportation. However, counsel acknowledged:

> "Your Honor, it's your Honor's discretion as to whether he should be allowed to withdraw his plea of guilty or not. And seeing as though both of the cases that have been presented to your Honor, it isn't clear as to what the interpretation of that statute actually is. One case thinks it's instructionary, and another case thinks it's mandatory.
>
> I would ask that Mr. Guzman be allowed to withdraw his plea of guilty."

¶ 22　Under the circumstances, the trial court was simply left to decide whether the section 113-8 admonishments were mandatory.[1] Because the trial court's failure to admonish defendant of potential immigration consequences does not by itself call into question the constitutional voluntariness of the guilty plea (*Delvillar*, 235 Ill. 2d at 521-22), we will not disturb the court's decision denying defendant's motion to withdraw his plea (*Pullen*, 192 Ill. 2d at 39-40).

¶ 23　　　　　　　　　　　　　　　B. Prejudice

---

[1] Ultimately, the trial court correctly determined that the admonishments were merely directory. See *Delvillar*, 235 Ill. 2d at 521-22.

¶ 24    Alternatively, defendant argues that we should reverse the trial court's denial of his motion to withdraw his plea on the ground that he suffered prejudice as a result of the court's failure to admonish him as to potential immigration consequences.

¶ 25    In *Delvillar*, the supreme court determined that a trial court's failure to admonish a defendant pursuant to section 113-8 requires reversal where "real justice has been denied or if the defendant has been prejudiced by the inadequate admonishment." *Delvillar*, 235 Ill. 2d at 522. The court noted that a defendant could show prejudice by demonstrating that (1) he was subject to potential immigration penalties, or (2) that he would have pleaded not guilty had he been admonished of those potential consequences. Specifically, the court stated:

> "Again, it is defendant who must demonstrate that he has been prejudiced by the improper admonishment. [Citation.] In this case defendant has not done so. In his motion to withdraw his guilty plea and at argument on the motion, defendant failed to demonstrate that he was subject to any potential immigration penalties or that he would have pleaded not guilty had he been admonished of those potential consequences. After having answered 'yes' to the question whether he was a United States citizen in a previous hearing, defendant made no attempt to prove his resident alien status to the court in the subsequent hearing on his motion." *Delvillar*, 235 Ill. 2d at 522.

¶ 26    The *Delvillar* case was pending before the supreme court at the time defendant's motion was heard in the trial court. The record reveals, however, that defendant failed to show the trial court, in his motion or argument, that any of those consequences discussed in *Delvillar* have been or will be applied to him. For example, defendant's motion simply stated that "[d]efendant wishes to

8

withdraw his guilty plea." It fails to offer any basis why he should be allowed to do so. Nowhere in the motion does defendant state that he was subject to potential immigration penalties or that he would not have pled guilty if the court had properly admonished him of the immigration consequences. In addition, hearings were held on May 21, 2009 and June 11, 2009. At no time during those proceedings did defense counsel inform the trial court that defendant was actually subject to any potential immigration penalties. Assessing the motion as presented to the trial court, as we must do (*People v. Smith*, 253 Ill. App. 3d 948 (1993)), we find no abuse of discretion in the trial court's denial of the motion to withdraw the plea.

¶ 27                II. Ineffective Assistance of Trial Counsel

¶ 28    Next, defendant claims that his motion to withdraw should have been granted because trial counsel's failure to inform him of the potential effect of his conviction, as required under *Padilla*, rendered his plea involuntary.

¶ 29    Claims of ineffective assistance of counsel arising from the plea bargaining process are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Jones*, 144 Ill. 2d 242 (1991). To prevail under *Strickland*, a defendant must establish that his attorney's performance was deficient and that he suffered prejudice as a result of counsel's unprofessional conduct. *Strickland*, 466 U.S. at 687.

¶ 30    Whether to accept or reject a guilty plea offer is a decision only the defendant can make. *People v. Blommaert*, 237 Ill. App. 3d 811 (1992). For this decision to be knowing and voluntary, a criminal defense attorney is required to fully inform the defendant of the facts and law related to the State's offer and must candidly advise the defendant concerning all aspects of the case, including direct consequences of accepting or rejecting the offer. *Blommaert*, 237 Ill. App. 3d at 816-17. In

9

particular, defense counsel is obligated to inform his client of the maximum and minimum sentence that can be imposed. *Id.* at 817.

¶ 31 Under the terms of federal immigration law, any alien who has been convicted of an enumerated offense is deportable. Section 1227(a)(2)(C) of title 8 provides:

> "Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device *** in violation of any law is deportable." 8 U.S.C. §1227(a)(2)(C) (2006).

Where deportation is a clear consequence, a criminal defense attorney is required to advise his or her client that the pending charges may carry a risk of adverse immigration consequences. *Padilla*, 559 U.S. at 371, 130 S. Ct. at 1484. "It is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.' " *Id*. (quoting *Hill v. Lockhart*, 474 U.S. 52, 62 (1985) (White, J., concurring in the judgment, joined by Stevens, J.)).[2]

---

[2] In *Chaidez v. United States*, 568 U.S. __, 133 S. Ct. 1103, 1113 (2013), the United States Supreme Court held that "defendants whose convictions became final prior to *Padilla* *** cannot benefit from its holding." However, defendant's conviction is not yet final. "A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen*,

¶ 32    Here, defendant asserts that counsel did not advise him that he risked deportation by pleading guilty. The record supports that assertion. Nothing in the transcripts or pleadings demonstrates that defense counsel advised defendant of any immigration consequences related to his guilty plea. Thus, defendant has established the first prong of the analysis.

¶ 33    To establish the second prong, prejudice, defendant must demonstrate that but for his counsel's error, there is a reasonable probability that he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 62; see generally *Strickland*, 466 U.S. at 694. Our review requires a fact specific analysis that considers the weight of the evidence, the consequences of legal options, and any circumstances that may affect a decision to enter a plea. *Premo v. Moore*, 562 U.S. __, 131 S. Ct. 733 (2011). To obtain relief on such an ineffective assistance claim, a defendant must show that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372, 130 S. Ct. at 1485.

¶ 34    Defendant contends that he was unaware of the risk of deportation when he accepted the State's plea offer and that it would have been reasonable under the circumstances for him to plead not guilty. In support of his claim of reasonableness, he alleges that (1) his conviction at trial was not certain because the evidence at the guilty plea hearing indicated that he was only found in the presence of stolen firearms along with two other individuals, (2) he may have had a plausible defense, and (3) he has family living in the United States.

---

510 U.S. 383, 390 (1994). Here, defendant's direct appeal is still pending before this court. *Padilla* therefore retroactively applies to defendant. The holding in *Chaidez* does not bear on our disposition.

11

¶ 35    These allegations sufficiently establish prejudice. Although a trial would still present the risk of deportation, it would provide defendant the opportunity to contest the State's evidence. See *United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012) (prejudice found where, but for counsel's error regarding deportation, defendant could have presented evidence at trial to remove crime from class of mandatory deportation). Moreover, defendant's family ties and bonds to the United States provide a rational basis to reject a plea deal. See *Padilla*, 559 U.S. at 368, 130 S. Ct. at 1483 (preserving client's right to remain in the United States may be more important to the client than any potential jail sentence); *State v. Sandoval*, 249 P.3d 1015 (Wash. 2011) (finding prejudice to lawful resident who was not informed of deportation consequences based on strong ties to the United States). Thus, we conclude that defendant made the requisite showing of prejudice under the *Strickland* test, and the trial court erred in dismissing his motion to vacate the guilty plea.

¶ 36                              APPEAL NO. 3-10-0802

¶ 37    In his second appeal, defendant argues that postconviction counsel was ineffective by failing to properly present his claim for ineffective assistance of trial counsel. Among other things, defendant asserts that postconviction counsel failed to include allegations in the petition that defendant would not have pled guilty if he had been properly informed of potential immigration consequences. Because we have concluded that trial counsel was ineffective on direct appeal, the issue presented in this appeal is moot. See *Riveria v. City of Chicago Electoral Board*, 2011 IL App (1st) 110283, ¶ 15 ("[a] case is moot when it presents no actual controversy or when the legal issue involved has ceased to exist"). Accordingly, we must dismiss the appeal. *Id*.

¶ 38                                CONCLUSION

¶ 39    The order of the circuit court of Will County denying defendant's motion to withdraw his

guilty plea is reversed, and the cause is remanded for further proceedings. Defendant's appeal from the judgment of the circuit court denying his postconviction petition is dismissed.

¶ 40    No. 3-09-0464, Reversed and remanded.

¶ 41    No. 3-10-0802, Appeal dismissed.

¶ 42    JUSTICE HOLDRIDGE, specially concurring.

¶ 43    I agree with Presiding Justice Lytton that the trial court's order denying the defendant's motion to withdraw his guilty plea should be reversed. However, I disagree with his analysis in several respects. First, in my view, the trial court's failure to admonish the defendant regarding the immigration consequences of his guilty plea rendered the defendant's plea involuntary, thereby violating the defendant's constitutional rights. I would reverse the trial court's order, and the defendant's conviction, on that basis. In addition, I believe that the defendant proved that his postconviction counsel provided inadequate representation by failing to present necessary evidence in support of the defendant's claim for ineffective assistance of trial counsel. Accordingly, if I were not inclined to reverse the defendant's conviction for the foregoing reason, I would remand the case for further second-stage postconviction proceedings. I address each of these issues in turn.

¶ 44            1. The Trial Court's Failure to Properly Admonish the Defendant

¶ 45    In his initial motion to withdraw his guilty plea, the defendant argued that his guilty plea was involuntary because the trial court failed to admonish him of the potential immigration consequences he faced if he pled guilty, as required by section 113-8 of the Code (725 ILCS 5/113-8 (West 2008)). Citing our supreme court's ruling in *People v. Delvillar*, 235 Ill. 2d 507, 521-22 (2009), Presiding Justice Lytton concludes that a trial court's failure to admonish a defendant of the potential immigration consequences of his plea "does not by itself call into question the constitutional

13

voluntariness of the guilty plea." *Supra* ¶ 22. Our supreme court based this ruling on the following two premises: (1) immigration consequences are "collateral consequences" (*Delvillar*, 235 Ill. 2d at 521; *People v. Williams*, 188 Ill. 2d 365, 372 (1999)); and (2) " 'the defendant's knowledge of the collateral consequences of a guilty plea is not a prerequisite to the entry of a knowing and intelligent guilty plea' " (*Delvillar*, 235 Ill. 2d at 521 (quoting *Williams*, 188 Ill. 2d at 371)). In my view, neither proposition survives the United States Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010). In *Padilla*, the United States Supreme Court held that deportation was a "particularly severe penalty" that has become "intimately related to the criminal process" because federal immigration law has "enmeshed" criminal convictions and the penalty of deportation and "made removal nearly an automatic result for a broad class of noncitizen offenders." *Padilla*, 559 U.S. at 365-66. Because of its close connection to the criminal process, the United States Supreme Court ruled that deportation as a consequence of criminal conviction is "uniquely difficult to classify as either a direct or a collateral consequence." *Id.*

¶ 46     The Illinois Supreme Court's conclusion that a trial court's failure to admonish a defendant of the potential immigration consequences of his guilty plea does not call into question the constitutional voluntariness of the plea is based entirely on the premise that immigration consequences are "collateral" as a matter of law. *Delvillar*, 235 Ill. 2d at 521. That premise was squarely rejected by the United States Supreme Court in *Padilla* (at least with respect to deportation). In this case, the defendant faced deportation as a result of his guilty plea and subsequent conviction.[3] Because of the unique nature of deportation and its close connection to the criminal process, the trial

---

[3]  See 8 U.S.C. § 1227(a)(2)(C) (2006) ("[a]ny alien who *** is convicted *** of [possession of a firearm] *** in violation of any law is deportable").

14

court was required to admonish the defendant that he faced deportation as a result of his guilty plea and subsequent conviction in order to ensure that the defendant's plea was knowing and voluntary.[4]

¶ 47    I recognize that the First District of our Appellate Court and courts in other jurisdictions have rejected this conclusion.  See, *e.g.*, *People v. Guiterrez*, 2011 IL App (1st) 093499, ¶ 58 (applying *Delvillar* notwithstanding *Padilla* and stating that "[w]e do not read *Padilla* as rejecting the distinction between direct and collateral consequences in determining whether a defendant's guilty plea was knowingly and voluntarily entered"); *State v. Ortiz*, 44 A.3d 425, 431 (N.H. 2012) (ruling that "*Padilla* does not speak to the due process obligations of a trial court accepting a guilty plea," and upholding the traditional view that immigration consequences are collateral for that purpose); see also *Smith v. State*, 697 S.E.2d 177, 183-85 (Ga. 2010);  *Steele v. State*, 291 P.3d 466, 470 (Idaho Ct. App. 2012); *United States v. Youngs*, 687 F.3d 56, 61-63 (2d Cir. 2012); *United*

---

[4]  The dissent asserts that "it is only for our supreme court to determine whether *Padilla* compels a change in Illinois law" and that, until our supreme court makes that determination, "[w]e do not have the authority to overrule or ignore *Delvillar*," even assuming that my interpretation of *Padilla* is correct.  *Infra*, ¶ 64.  I disagree.  Our supreme court decided *Delvillar* before the United States Supreme Court decided *Padilla*.  The United States Supreme Court has the final word on the meaning of the federal constitution's requirements.  In my view, *Delvillar* conflicts with *Padilla*, and *Padilla* controls.  If our supreme court ultimately disagrees with my interpretation of *Padilla* and reaffirms *Delvillar*'s holding notwithstanding *Padilla*, then we would be bound by that holding until the United States Supreme Court rules otherwise.  *People v. Fountain*, 2012 IL App (3d) 090558, ¶ 23 n.5.  Until that happens, however, we are free to apply *Padilla* as we understand it.  See *id.*

*States v. Nicholson*, 676 F.3d 376, 381 n.3 (4th Cir. 2012); *United States v. Delgado-Ramos,* 635 F.3d 1237, 1240 (9th Cir. 2011). These courts correctly note that *Padilla*'s holding addressed counsel's obligations to provide effective assistance under the sixth amendment, not a trial court's due process obligations to ensure the voluntariness of a guilty plea under the fifth amendment. However, in reaching its holding, *the Padilla* Court addressed the nature of deportation *per se* and its relation to a criminal conviction. The Court concluded, as a matter of law, that deportation could not be characterized as a "collateral consequence" of a criminal conviction. Logic dictates that this conclusion must be true *for all purposes*. Unlike the courts cited above, I find it incongruous and inappropriate to characterize deportation as "collateral" for fifth amendment purposes but not for sixth amendment purposes. Accordingly, I would hold that the trial court's failure to warn the defendant that he faced a risk of deportation before accepting the defendant's guilty plea rendered the plea involuntary and violated the fifth amendment.

¶ 48          2. Ineffective Assistance of Trial and Postconviction Counsel

¶ 49     If I were not inclined to reverse based upon the trial court's inadequate admonishments, I would grant the alternative postconviction relief sought by the defendant in his supplemental briefs on appeal. Specifically, I would find that the defendant's postconviction counsel rendered ineffective assistance by failing to properly present the defendant's claim for ineffective assistance of trial counsel, and I would remand for further second-stage postconviction proceedings on that issue.

¶ 50    As an initial matter, I believe that it would be helpful to clarify the legal standards governing the defendant's underlying claim for ineffective assistance of trial counsel. In his postconviction petition, the defendant argued that his trial counsel rendered ineffective assistance by failing to advise him of the potential immigration consequences of his plea. As Presiding Justice Lytton

correctly notes, *Padilla* governs this claim. In *Padilla*, the United States Supreme Court held that, where deportation is a clear consequence of pleading guilty (as here), counsel's failure to advise a defendant of the potential immigration consequences of a guilty plea constitutes deficient performance under prevailing professional norms. *Padilla*, 559 U.S. at 366. In other words, *Padilla* holds that such a failure by counsel violates the first prong of the *Strickland* test as a matter of law. *Id.* at 366. Thus, the defendant can prevail on his claim for ineffective assistance of counsel if he can also satisfy the second prong of *Strickland* by demonstrating prejudice. *Id.*

¶ 51       To show prejudice in the plea context, a defendant "must show that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Hughes*, 2012 IL 112817, ¶ 63. As the United States Supreme Court put it in *Padilla*, the defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372. In his supplemental brief on appeal, the defendant states that, in order to make this showing, he "must assert either a claim of actual innocence or articulate a plausible defense that could have been raised at trial." *Hughes*, 2012 IL 112817, ¶ 64; see also *People v. Hall*, 217 Ill. 2d 324, 335-36 (2005). I disagree.[5]

¶ 52       In my view, a defendant facing potential deportation may show that his decision to reject a plea offer and go to trial would have been *rational* (which is all that *Padilla* requires) without showing that he would likely have succeeded at trial. As the United States Supreme Court

_____

[5] This court is not bound by the defendant's erroneous statement of the law. *People v. Horrell*, 235 Ill. 2d 235, 241 (2009) (a reviewing court is not bound by a party's concession); see also *People v. Martino*, 2012 IL App (2d) 101244, ¶ 24.

17

recognized in *Padilla*, "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." (Internal quotation marks omitted.) *Padilla*, 559 U.S. at 368. Accordingly, a defendant who fears deportation more than he fears a longer prison sentence might rationally choose to go to trial even if his defense does not appear very likely to succeed. See, *e.g.*, *United States v. Orocio*, 645 F.3d 630, 645 (3d Cir. 2011) ("For *the alien defendant most concerned with remaining in the United States, especially a legal* permanent resident, it is not at all unreasonable to go to trial and risk a ten-year sentence and guaranteed removal, but with the chance of acquittal and the right to remain in the United States, instead of pleading guilty to an offense that, while not an aggravated felony, carries 'presumptively mandatory' removal consequences."). Such a defendant might be willing to risk a lengthier prison sentence in exchange for even a slight chance of prevailing at trial and thereby avoiding deportation. Such a defendant would be prejudiced by his attorney's failure to advise him of the risk of deportation because: (1) he would not have pled guilty if he had known about the deportation risk; and (2) his counsel's deficient performance deprived him of a chance to avoid deportation by prevailing at trial, even if that chance was slim. [6] In other words, depending on the value that the defendant attaches to remaining in the United States, a decision to reject a plea bargain and risk a lengthier sentence by going to trial might be rational even if the defendant appears unlikely to prevail at trial. See, *e.g.*, *Orocio*, 645 F.3d at 643 (ruling that, under Padilla, a "rational" decision not to plead guilty "does not focus solely on whether a defendant would have been found guilty at trial"). Under such circumstances, it

---

[6] The defendant might also be deprived of the chance to spend additional time in the United States (and outside of prison) while awaiting trial.

18

would be inappropriate and overly burdensome to require the defendant to assert either a claim of actual innocence or a plausible defense that could have been raised at trial.[7]

---

[7] In asserting that he was required either to raise a claim of actual innocence or to articulate a plausible defense in order to show prejudice, the defendant cites language to that effect in *Hughes* and *Hall*, two Illinois Supreme Court decisions. In imposing this requirement, the Illinois Supreme Court cited the United States Supreme Court's decision in *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). See *Hall*, 217 Ill. 2d at 335-36. However, *Hill* merely ruled that, in order to establish *Strickland* prejudice in the plea context, a defendant must show that counsel's constitutionally ineffective performance "affected the outcome of the plea process," *i.e.*, that there is "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The *Hill* Court went on to note that, when trial counsel errs by failing to discover exculpatory evidence or by failing to inform the defendant of a possible affirmative defense, the determination of whether such errors prejudiced the defendant by inducing him to plead guilty will depend in large part on whether the presentation of the evidence or the assertion of the defense likely would have changed the outcome of a trial. *Id.* However, *Hill* did *not* hold or imply that the same considerations should govern the analysis in a case like this, wherein the alleged error was counsel's failure to advise the defendant of the potential immigration consequences of his plea.

Such a holding would make no sense. Unlike the failure to discover exculpatory evidence or to inform the defendant about an affirmative defense, the failure to advise a defendant regarding immigration consequences has nothing to do with the strength of the defendant's case at trial. A defendant alleging the latter type of error is not claiming that he pled guilty because

19

¶ 53    The dissent assumes that, in order to show prejudice, the defendant must present evidence suggesting that he was *actually deported. Infra* ¶¶ 58-64, 66.  Not so.  As noted above, the defendant is merely required to show that he would not have pleaded guilty had he known about the potential immigration consequences and that it would have been rational for him to reject the plea deal and go to trial.  *Padilla*, 559 U.S. at 373; *Hughes*, 2012 IL 112817, ¶ 63.  In other words, he need only show a reasonable probability that trial counsel's failure to advise of him of the potential immigration consequences of a guilty plea induced him to plead guilty.  *Hughes*, 2012 IL 112817, ¶ 63.  He does not need to show, in addition, that he was actually deported.  The prejudice occurs *at the time the guilty plea is entered* based on false or incomplete information, not when a subsequent adverse immigration consequence occurs.

¶ 54    Turning to the merits of the defendant's claim, it is clear that the defendant's postconviction counsel failed to adequately present the defendant's claim for ineffective assistance of trial counsel.

---

his counsel's deficient representation caused him to believe that his case was weaker than it actually was.  Rather, he is claiming that he pled guilty because he was unaware of the immigration consequences of such a plea.  Thus, such a defendant is not required to show that he would have succeeded at trial in order to establish prejudice.  As the United States Supreme Court recently noted in *Padilla*, the only question relevant to the prejudice inquiry in such cases is whether it would have been rational for the defendant to reject the plea offer and go to trial in an effort to avoid potential deportation.  *Padilla*, 559 U.S. at 371-72.  I recognize that the First District of our Appellate Court has reached the opposite conclusion (see *Gutierrez*, 2011 IL App (1st) 093499, ¶ 45), but I find the *Gutierrez* court's analysis of this issue contrary to *Padilla* and to the principles discussed above.

20

When he filed the defendant's first postconviction petition, the defendant's postconviction counsel failed to present any evidence suggesting that the defendant would not have pled guilty had he been informed of the immigration consequences of the plea. The trial court dismissed the petition on that basis. Counsel subsequently filed an amended postconviction petition with an affidavit signed by the defendant stating that he would not have pled guilty had he been informed about the immigration consequences, but the trial court struck the amended petition. The affidavit was not notarized and counsel submitted the amended petition without filing a motion for leave to submit a successive petition, as required by section 122-1(f) of the Illinois Post-Conviction Hearing Act (725 ILCS 5/122-1(f) (West 2010)). Counsel also failed to show cause for his failure to properly bring the claim in the initial petition and prejudice resulting from that failure (see *id.*), and he failed to withdraw the notice of appeal before filing the successive petition. According to the defendant's appellate counsel, the defendant was deported approximately six weeks later. See *id.*

¶ 55    In my view, postconviction counsel's failure to timely submit any evidence of prejudice—a required element of the defendant's claim for ineffective assistance of trial counsel—violated the defendant's right to the reasonable assistance of postconviction counsel. See 725 ILCS 5/122-1 *et seq.* (West 2010); *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). Defendant's postconviction counsel failed to make amendments to the petition necessary for an adequate presentation of the defendant's contentions, as required by Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). Accordingly, even if I did not believe that the trial court's error required a reversal of the defendant's conviction, I would reverse and remand for additional second-stage postconviction proceedings due to postconviction counsel's inadequate representation. During those proceedings, the defendant would be allowed to present evidence in support of his claims that: (1) he would not have pleaded guilty had he known

21

about the immigration consequences of his plea; and (2) it would have been rational under the circumstances to reject the plea bargain and proceed to trial.

¶ 56 Presiding Justice Lytton declines to address the defendant's claim for ineffective assistance of postconviction counsel because he concludes that the defendant proved his claim of ineffective assistance of trial counsel, and he would reverse the trial court's order on that basis. *Supra* ¶ 37. I disagree with this approach. In my view, the defendant failed to prove his claim for ineffective assistance of trial counsel because his postconviction counsel presented no timely evidence of prejudice (which amounted to ineffective assistance). The proper remedy for postconviction counsel's inadequate representation would be to reverse the trial court's order and remand for further second-stage postconviction proceedings so that the defendant may present such evidence. Nevertheless, because I believe that we should reverse the trial court's order denying the defendant's motion to withdraw his guilty plea due to the trial court's failure to properly admonish the defendant, we do not need to remand for further postconviction proceedings.

¶ 57 JUSTICE McDADE, dissenting.

¶ 58 I dissent from the majority opinion reversing the trial court's denial of defendant's motion to withdraw guilty plea.

¶ 59 After approximately three years of appellate litigation, there are presently three issues in this case. The issues revolve around: (1) the circuit court's failure to admonish defendant of potential immigration consequences, (2) trial counsel's alleged failure to inform defendant of potential immigration consequences (ineffective assistance), and (3) postconviction counsel's alleged failure to adequately support defendant's amended petition (unreasonable assistance). In the interest of clarity, I will go through each issue and respond to each judge's respective finding.

22

¶ 60    The first issue is whether the circuit court's failure to admonish defendant in accordance with section 113-8 of the Code, concerning the potential effect of a guilty plea and conviction, renders his guilty plea involuntary.  The author answers this question in the negative.  *Supra*, ¶ 22.   I agree.

¶ 61    The *Delvillar* court expressly held that immigration consequences are "collateral consequences."  *Delvillar*, 235 Ill. 2d at 521-22.  Thus, reversal is only required when defendant establishes he has been prejudiced by the inadequate admonishments.  *Delvillar*, 235 Ill. 2d at 522. Defendant, however, merely sought to withdraw his guilty plea on the sole ground that the 113-8 admonishments were mandatory.  Specifically, defendant presented the circuit court with the following argument:

> "MS. TISDALE [defense counsel]: *** [T]he language of 725 ILCS 5/113-A [*sic*], is that if you are not a citizen of the United state, [sic] you're hereby advised that the -- that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, your Honor.  And that admonishment was not given to Mr. Guzman.
>
> Your Honor, it's your Honor's discretion as to whether he should be allowed to withdraw his plea of guilty or not.  And seeing as though both of the cases that have been presented to your Honor, it isn't clear as to what the interpretation of that statute actually is.  One case thinks it's instructionary, and another case thinks it's mandatory.
>
> I would ask that Mr. Guzman be allowed to withdraw his plea of guilty."

¶ 62    Under the circumstances, the circuit court was simply left to decide whether the section 113-8 admonishments were mandatory.[8]  Defendant fell far short of meeting his burden to show the court that he suffered prejudice as a result of its failure to admonish him.  Because the court's failure to admonish defendant of potential immigration consequences does not by itself call into question the constitutional voluntariness of his guilty plea (*Delvillar*, 235 Ill. 2d at 521-22), I would not disturb its decision denying defendant's motion to withdraw guilty plea (*Pullen*, 192 Ill. 2d at 39-40).

¶ 63    While the special concurrence acknowledges the "collateral consequence" holding espoused in *Delvillar*, it finds "[t]hat premise was squarely rejected by the United States Supreme Court in *Padilla* (at least with respect to deportation)."  *Supra*, ¶ 46.  Thus, the special concurrence indicates that the trial court's failure to admonish defendant rendered defendant's plea involuntary and therefore invalid even absent a showing of prejudice.  While the special concurrence's interpretation may be correct, it is only for our supreme court to determine whether *Padilla* compels a change in Illinois law.  Until such a time, *Delvillar* remains the applicable law in Illinois.  We do not have the authority to overrule or ignore *Delvillar*, even assuming Justice Holdridge's interpretation is correct.

¶ 64    The second issue is whether defendant was deprived of effective assistance of counsel where trial counsel allegedly failed to inform defendant of the potential immigration consequences associated with pleading guilty.  The author finds defendant established both deficient performance and prejudice.  *Guzman*, *Supra*, ¶¶ 30-35.  The special concurrence disagrees, finding that "defendant failed to prove his claim for ineffective assistance of trial counsel because his post conviction counsel presented no timely evidence of prejudice."  *Supra*,

---

[8] Ultimately, the trial court correctly determined that the admonishments were merely directory.  See *Delvillar*, 235 Ill. 2d at 521-22.

¶ 56. I believe defendant has simply failed to establish prejudice.[9]

¶ 65 Initially, I note that postconviction counsel's involvement has no bearing on defendant's direct appeal claim of ineffective assistance. Trial counsel cannot be deemed ineffective at trial due to some error that subsequently takes place during post conviction proceedings.

¶ 66 Moving to the matter of prejudice with respect to the second issue, defendant's initial reply brief stated that "he is now awaiting deportation pending the outcome of this appeal." Defendant failed, however, to provide us with any evidence supporting this bald claim. Thus, similar to the argument he tendered to the trial court, defendant's argument on appeal lacked any *substantive* evidence of prejudice. This failure alone was sufficient to justify a finding of waiver. See *People v. Walker*, 403 Ill. App. 3d 68, 79 (2010). In the interest of justice and equity, however, we ordered defendant to brief us on "the status of any deportation proceedings" involving defendant.

¶ 67 Defendant subsequently filed a response stating: "On February 18, 2011, counsel spoke to Mr. Guzman's immigration attorney, Ms. Beatriz Sandoval. Ms. Sandoval stated that Mr. Guzman was deported late December 2010." Defendant did not attach any order or pleading verifying the above claim or confirming the deportation was a result of this conviction. Thus, the question of whether defendant has suffered prejudice as a result of the trial counsel's alleged failure to admonish him remains unanswered. Moreover, because defendant's status does not fall squarely within the judicially noticeable category of facts "capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy[]" (*People v. Davis*, 65 Ill. 2d 157, 165 (1976)), I reject any application of the doctrine of judicial notice.

---

[9] I do not discuss the performance prong of *Strickland* as I dispose of this issue on the prejudice prong alone.

25

¶ 68 I also reject the conclusion that section 1227(a)(2)(C) of Title 8 commands removal (deportation) a "clear consequence" if a defendant is convicted of one of the named offenses found in section 1227(a)(2)(C). See *Guzman*, 2013 IL App (3rd) 090464 ¶ 26. Section 1227(a)(2)(C) merely states that a defendant "is deportable" if convicted. 8 U.S.C. § 1227(a)(2)(C). It does not provide that a defendant "shall be deported."

¶ 69 The author, however, does not rely solely upon section 1227(a)(2)(C) to establish prejudice. He also asserts that the merits of the State's case against defendant were not certain, defendant may have had a plausible defense, and defendant has family living in the United States. *Supra*, ¶ 34. None of these beliefs, however, overcomes the fact that defendant has not conclusively established that he has been deported or even been subject to any deportation proceedings based on this conviction. In essence, the majority is providing a remedy prior to establishing whether an actual wrong (deportation) has even occurred or is pending. The fact remains, if defendant is not deported or the United States does not pursue any deportation action against defendant on the basis of this conviction, defendant does not suffer any prejudice (immigration consequence) as a result of his plea.

¶ 70 I acknowledge appellate counsel's hearsay statement that she spoke with defendant's immigration attorney, who informed her that defendant was deported in December 2010. The fact remains that counsel's statement constitutes hearsay, and there is no documentation to confirm the accuracy of either the recollection or the representation of the immigration attorney. Thus, I believe it would be improper to simply accept this alleged fact as true. In coming to this conclusion, I note that counsel has had two opportunities to provide this court with *evidence*, not hearsay, of "the status of any deportation proceedings." Counsel has failed to do so on both occasions. Moreover, counsel initially stated that defendant was awaiting deportation pending conclusion of this appeal. After

26

additional briefing, however, counsel stated that defendant had already been deported. Defendant's status is simply unclear.

¶ 71    Had defendant been deported or been facing deportation proceedings, counsel could have simply attached a copy of defendant's deportation order or, alternatively, any pending deportation pleadings. Counsel chose not to do so. Instead, counsel, after being instructed otherwise, simply provided us with a hearsay statement, one of which differed from her original report regarding defendant's status. This does not establish prejudice. A showing of prejudice must encompass more than a defendant's own subjective, self-serving testimony or statements. *People v. Hale*, 2013 IL 113140, ¶ 18.

¶ 72    Even if I were, however, to accept counsel's hearsay statement as affirmative evidence of defendant's alleged deportation, I note that counsel has failed to provide us with any evidence, or statement for that matter, as to the specific grounds of defendant's alleged deportation. Was defendant deported on the basis of his conviction of aggravated possession of stolen firearms, or was he deported as a result of a different conviction? Was defendant deported due to failure to file a change of address?[10] See 8 U.S.C. § 1227(a)(3)(A). Was defendant deported due to alien smuggling conduct?[11] See 8 U.S.C. § 1227(a)(1)(E)(i). Defendant would have us simply assume that he was deported as a result of his conviction of aggravated possession of stolen firearms. There is simply no evidence in the record to justify this assumption. Without such evidence, I cannot find that defendant has suffered prejudice as a result of trial counsel's alleged failure to inform him of potential immigration consequences. Thus, his ineffective assistance of trial counsel claim must fail.

---

[10] A conviction is not required for this ground of deportation.

[11] A conviction is not required to establish this ground of deportation.

27

¶ 73    The third and final issue in this case is whether post conviction counsel's representation was unreasonable where counsel: (1) failed to submit, in the initial petition, an affidavit from defendant stating that he would have insisted on going to trial had he been informed of the immigration consequences of his plea, (2) never argued that there was a viable defense to the charge, (3) failed to file a motion to file a successive petition, and (4) failed to withdraw the notice of appeal.  The author finds this issue moot due to his finding that trial counsel provided ineffective assistance.  *Supra*, ¶ 37.  The special concurrence finds the proper remedy on this precise issue would be to remand for further second-stage postconviction proceedings so that defendant may present evidence of trial counsel's ineffectiveness.  *Supra*, ¶ 56.  He notes, however, that remand would not be necessary due to his belief that *Padilla* alone requires reversal.  *Supra*, ¶ 56.  Much like the second issue, I believe defendant's unreasonable assistance claim fails because defendant has not established prejudice.

¶ 74    Even if postconviction counsel carried out all the acts defendant now complains of, the amended petition would still lack merit due to the fact it does not conclusively establish that defendant has been deported or even been subject to any deportation proceedings based on this conviction.  I do not believe simply citing a random case number meets defendant's burden.[12]  Was the case ultimately dismissed?  If not, what is the standing of the case?  Again, defendant is arguing the substantive merits of his plea before he has even established whether he has suffered any injury (deportation) as a result of his plea.  While defendant does not complain of this on appeal, I note that neither a deportation court order nor deportation pleadings were attached to defendant's amended postconviction petition.  The fact remains, after three years of appellate litigation, we still unfortunately do not have any affirmative

---

[12] The claims in defendant's amended petition required a showing of prejudice.

evidence regarding defendant's status. Thus, I do not believe defendant's *specific* complaints with regard to postconviction counsel establish unreasonable assistance.

¶ 75    For the foregoing reasons, I would affirm the trial court's order denying defendant's motion to withdraw guilty plea.