**10-4501-cr**
**United States v. Youngs**

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2011

(Argued: March 23, 2012                    Decided: July 23, 2012)

Docket No. 10-4501-cr

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

    *Appellee*,

     v.

MARK ALLEN YOUNGS,

    *Defendant-Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: LIVINGSTON, LYNCH, and DRONEY, *Circuit Judges*.

  Appeal from a conviction for production and possession of child pornography following a guilty plea. Appellant argues that his plea is constitutionally invalid because the district court (Siragusa, *J.*) did not apprise him of the possibility of civil commitment as a sexually dangerous person at the end of his prison term. We hold that due process and Rule 11 of the Federal Rules of Criminal Procedure did not require the district court to advise him of that possibility. We accordingly AFFIRM the conviction.

          CHRISTOPHER MILLER (James A. Cohen and
          Michael W. Martin, *on the brief*), Fordham
          University School of Law, Lincoln Square Legal

Services, Inc., New York, NY, *for* Defendant-Appellant.

STEPHAN J. BACZYNSKI, Assistant United States Attorney (William J. Hochul, Jr., United States Attorney for the Western District of New York, *on the brief*), United States Attorney's Office for the Western District of New York, Buffalo, NY, *for* Appellee.

DRONEY, *Circuit Judge*:

Defendant Mark Allen Youngs ("Youngs") appeals from his judgment of conviction. On August 27, 2008, Youngs waived indictment and pleaded guilty in the U.S. District Court for the Western District of New York to a two-count Superseding Information that charged him with producing child pornography in violation of 18 U.S.C. § 2251(a) ("Count One"); and possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2) ("Count Two"). Youngs argues that his plea was defective because the district court did not advise him of the possibility of civil commitment as a sexually dangerous person at the end of his prison term. We hold that the district court was not required by due process or Rule 11 of the Federal Rules of Criminal Procedure ("Rule 11") to advise Youngs of the possibility of civil commitment and affirm the conviction.

## BACKGROUND

**I.      The Plea**

Youngs pleaded guilty pursuant to a plea agreement that set forth the possible sentences for each count of the child pornography offenses in the Information: Count One carried a mandatory minimum sentence of 15 years' imprisonment and a possible maximum sentence of

30 years' imprisonment, a fine of $250,000, a mandatory special assessment, and a term of supervised release of up to life; and Count Two carried a maximum sentence of 10 years' imprisonment, a fine of $250,000, a mandatory special assessment, and a term of supervised release of up to life.

At his plea hearing, the district court reviewed in detail the plea agreement with Youngs and the various rights set forth in Rule 11. As a part of this review, the court described the minimum and maximum sentences of imprisonment, the supervised release term that Youngs faced, the forfeiture of his computer equipment, and his obligations under the Sex Offender Registration and Notification Act[1] following his release from incarceration. Youngs responded that he understood all of these consequences. He waived his right to indictment and pleaded guilty to both Counts of the Information. The court accepted his plea.

On October 15, 2010, the court sentenced Youngs to concurrent sentences of imprisonment for 240 months on Count One and 120 months on Count Two, and 40 years of supervised release with numerous conditions. The court also imposed the special assessment for each count.

**II.    Civil Commitment Under the Adam Walsh Act**

On appeal, Youngs disputes the validity of his guilty plea because the district court did not inform Youngs that by pleading guilty, he faced the possibility of civil commitment under the Adam Walsh Child Protection and Safety Act of 2006 (the "Act") following the completion of his incarceration. *See* 18 U.S.C. § 4248(a) (2006).

---

[1] This act requires a sex offender to register with each jurisdiction in which he resides, is employed, or is a student, and it requires states to impose a criminal penalty upon any sex offender who fails to register. 42 U.S.C. § 16913.

3

The Act permits the Attorney General or the Director of the Bureau of Prisons ("BOP") to certify an individual in the custody of the BOP approaching the end of his period of incarceration as a "sexually dangerous person." *Id.* The inmate is provided a hearing in the district court, and his release from incarceration is stayed. *Id.* If, at the hearing, the Government demonstrates by clear and convincing evidence that the inmate is "sexually dangerous," the inmate is committed to further custody until the court determines that he is no longer sexually dangerous. *Id.* § 4248(d)-(e). A "sexually dangerous person" is defined as a person who (1) "has engaged or attempted to engage in sexually violent conduct or child molestation" and (2) "is sexually dangerous to others" in that he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." *Id.* § 4247(a)(5)-(6).

## DISCUSSION

### I. Due Process Requirements for Guilty Pleas

"It is a settled principle of federal constitutional law that a guilty plea violates due process and is therefore invalid if not entered voluntarily and intelligently." *Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir. 2005) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)). A district court may not accept a guilty plea "without an affirmative showing that it was intelligent and voluntary." *Boykin*, 395 U.S. at 242. Rule 11 sets forth certain requirements of the district court's plea allocution to assist the court with "making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *McCarthy v. United States*, 394 U.S. 459, 465 (1969). To abide by Rule 11, the district court must advise the defendant of the right to plead not guilty, the rights waived by

4

pleading guilty, and other specific consequences of pleading guilty, such as the maximum penalties he faces, "including imprisonment, fine, and term of supervised release." Fed. R. Crim. P. 11(b)(1); *Zhang v. United States*, 506 F.3d 162, 168 (2d Cir. 2007) ("Rule 11 sets forth requirements for a plea allocution and is designed to ensure that a defendant's plea of guilty is a voluntary and intelligent choice . . . ." (internal quotation marks omitted)).

However, any "variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights." Fed. R. Crim. P. 11(h). Rule 11 violations that are not objected to at the time of the plea are subject to plain error review under Rule 52(b) of the Federal Rules of Criminal Procedure. *United States v. Vonn*, 535 U.S. 55, 62-63 (2002). Plain error review requires a defendant to demonstrate that "(1) there was error, (2) the error was plain, (3) the error prejudicially affected his substantial rights, and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Flaharty*, 295 F.3d 182, 195 (2d Cir. 2002) (internal quotation marks and brackets omitted). To be plain, an error of the district court must be "obviously wrong in light of existing law." *United States v. Pipola*, 83 F.3d 556, 561 (2d Cir. 1996). Additionally, to show that a Rule 11 violation was plain error, the defendant must demonstrate "that there is 'a reasonable probability that, but for the error, he would not have entered the plea.'" *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)).

The Government asserts that Youngs did not timely object during his plea proceeding, and therefore this Court should review his claim under the plain error standard. Youngs does not disagree, and issues not argued in the briefs are considered waived. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998). Moreover, regardless of the standard of review, we hold that

5

the district court did not err by accepting Youngs's guilty plea without advising him of the civil commitment implications of the Act.

The United States Supreme Court has concluded that a defendant can make an intelligent and voluntary guilty plea satisfying due process if he is "fully aware of the *direct* consequences" of a guilty plea. *Brady*, 397 U.S. at 755 (emphasis added) (adopting the language of the Fifth Circuit in *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc), *rev'd on other grounds*, 356 U.S. 26 (1958)). However, "[c]ertain possible consequences of a guilty plea are 'collateral' rather than direct and need not be explained to the defendant in order to ensure that the plea is voluntary." *United States v. U.S. Currency in the Amount of $228,536.00*, 895 F.2d 908, 915 (2d Cir. 1990) (listing examples of collateral consequences, such as parole revocation, the likelihood of an unfavorable military discharge, and the potential for civil commitment proceedings). Thus, district courts need not inform a defendant of collateral consequences during the plea colloquy. *See United States v. Salerno*, 66 F.3d 544, 550-51 (2d Cir. 1995) (holding that an enhancement in a future sentence based on the present conviction is a collateral consequence and need not be advised of by the district court in its plea colloquy). The requirements of Rule 11 are consistent with the principle that due process only requires courts to advise of direct consequences. *Michel v. United States*, 507 F.2d 461, 465 (2d Cir. 1974) ("Rule 11 does not affect the long-standing rule in this as well as other circuits that the trial judge when accepting a plea of guilty is not bound to inquire whether a defendant is aware of the collateral effects of his plea.").

This Court has described direct consequences as those that have a "definite, immediate and largely automatic effect on the range of the defendant's punishment," and any other

6

consequence is merely collateral. *Wilson*, 413 F.3d at 199 (internal quotation marks omitted); *see also Salerno*, 66 F.3d at 551 (affirming a conviction because an increased penalty for a future drug offense, while a "foreseeable possibility," is not "definite, immediate, and largely automatic" and therefore did not void the original guilty plea (internal quotation marks omitted)); *U.S. Currency*, 895 F.2d at 916 ("[C]ivil forfeiture is not a direct consequence of a guilty plea because it does not represent a definite, immediate and largely automatic effect on the range of the defendant's punishment." (internal quotation marks omitted)).

Civil commitment under the Act is not "definite, immediate, and largely automatic." *See U.S. Currency*, 895 F.2d at 916. Youngs will not face possible confinement under the Act until the end of his period of incarceration. Once he reaches that time, civil commitment is uncertain; the Government would first have to choose to certify Youngs for civil commitment and then would have to prove by clear and convincing evidence that Youngs is, *at that time*, a sexually dangerous person. To do so, it will have to demonstrate both a predicate act of sexual violence or child molestation as well as an illness, abnormality or disorder that makes him dangerous to others. The evidence available to support Youngs's conviction on Count One likely satisfies the first element, but the future satisfaction of the second element is far from certain at this time.[2]

---

[2] As described above, Youngs was convicted of both the possession and production of child pornography. At the time of his guilty plea, Youngs reserved his right to challenge a five-level increase in his total offense level for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor pursuant to Section 2G2.2(b)(5) of the United States Sentencing Guidelines. At sentencing, the district court indicated that there was evidence to support one instance of sexual abuse of a minor, but declined to apply the enhancement because one instance did not constitute a pattern of activity. We highlight these facts not to comment on the likelihood of the Government succeeding in a future civil commitment proceeding, but rather to emphasize that many factual and legal issues would have to be resolved before a court decides to civilly commit Youngs.

Because the possibility of civil commitment will only arise at the end of Youngs's twenty-year prison sentence and then will occur only if the Government meets its high burden under the Act, civil commitment is not definite, immediate, and automatic, and is therefore not a "direct" consequence of a guilty plea as defined by this Court. Other circuits have come to the same conclusion regarding similar civil commitment statutes. *Steele v. Murphy*, 365 F.3d 14, 17 (1st Cir. 2004) (holding that potential civil commitment under a state statute was a "collateral consequence of pleading guilty"); *George v. Black*, 732 F.2d 108, 110-11 (8th Cir. 1984) (holding that the possibility that a sex offender could face civil commitment under a state statute was a collateral consequence because "civil commitment does not flow automatically from the plea"). Because civil commitment is a collateral consequence, the district court was not required to advise of the possibility of civil commitment before accepting Youngs's plea.

**II.     The Impact of *Padilla***

Youngs, however, urges this Court to ignore what he terms the "formalist distinction between direct and collateral consequences." He relies upon the United States Supreme Court's holding in *Padilla v. Kentucky* that a defense attorney's incorrect advice to his client about the risk of deportation constituted ineffective assistance of counsel in violation of the Sixth Amendment and the language in the opinion that indicates that the direct/collateral distinction may not be apt in the Sixth Amendment context. 130 S. Ct. 1473, 1481-82 (2010).

In *Padilla*, the Kentucky Supreme Court had rejected below the defendant's ineffective assistance of counsel claim based on his lawyer's advice that he was unlikely to be deported as a result of his guilty plea for a state drug charge. *Id.* at 1478, 1481. The U.S. Supreme Court reversed, finding that the severity of deportation as a consequence of a guilty plea, as well as the

8

changes in federal immigration law that have made deportation "virtually inevitable" for many offenses, require that counsel give accurate advice on deportation to noncitizens prior to a guilty plea proceeding involving those offenses. *Id.* at 1478. In the context of the Sixth Amendment right-to-counsel analysis, the Court found deportation "uniquely difficult to classify as either a direct or collateral consequence," *id.* at 1482, because noncitizens convicted of certain crimes faced almost certain deportation and deportation is an "integral part" of the penalty for those crimes, *id.* at 1480. Noting that it had "never applied a distinction between direct and collateral consequences" to define reasonable assistance of counsel in the Sixth Amendment context, the Court determined that the distinction was "ill-suited" for evaluating the effectiveness of counsel in advising of deportation, and held that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.* at 1481-82.

While Youngs refers to *Padilla* as representing a "trend away from the distinction between direct and collateral consequences," Appellant Br. at 22, *Padilla*'s holding was limited to the requirement of counsel to advise of deportation pursuant to their Sixth Amendment responsibilities. These Sixth Amendment responsibilities of counsel to advise of the advantages and disadvantages of a guilty plea are greater than the responsibilities of a court under the Fifth Amendment. *See Libretti v. United States*, 516 U.S. 29, 50-51 (1995) (holding that counsel, not the court, bears the responsibility of advising a defendant of the consequences of a guilty plea, apart from the "small class of rights" enumerated in Rule 11). Thus, the *Padilla* Court's unwillingness to apply the direct/collateral distinction in the Sixth Amendment context does not demonstrate the Court's intention to do away with that distinction entirely in the Fifth Amendment context. *See United States v. Delgado-Ramos*, 635 F.3d 1237, 1240 (9th Cir. 2011)

9

(noting that in *Padilla* the Court "had no occasion to consider the scope of a district court's obligation" under due process or Rule 11, or "the continued viability of the distinction between direct and collateral consequences in the due process context"); *see also United States v. Nicholson*, 676 F.3d 376, 381 n.3 (4th Cir. 2012) (noting that the Court in *Padilla* did not address district courts' Rule 11 obligations).

While the Court in *Padilla* did not discard the direct/collateral distinction for due process, we recognize that *Padilla* may create some uncertainty as to the usefulness of categorizing *certain* consequences as either "direct" or "collateral" in the Fifth Amendment context.[3] We nonetheless conclude that advising of the possibility of civil commitment under the Act does not fall within the scope of a district court's due process obligations because the concerns expressed by the Supreme Court in *Padilla* as to deportation in the context of adequate counsel under the Sixth Amendment do not apply to such a remote and uncertain consequence as civil commitment.[4]

In deeming deportation a "virtually inevitable" result of a noncitizen's conviction for

---

[3] For example, the Advisory Committee on Criminal Rules has proposed an amendment to Rule 11 to include a "generic warning" of deportation risks in the plea colloquy, and this proposed amendment has been published for public comment. Report of the Advisory Committee on Criminal Rules at 2, 3 (Dec. 8, 2010).

[4] Although the Eleventh Circuit recently extended *Padilla*'s reasoning to affirmative misrepresentations by counsel regarding civil commitment, its holding was also limited to the Sixth Amendment context. *See Bauder v. Dep't of Corr.*, 619 F.3d 1272, 1275 (11th Cir. 2010) (per curiam). Moreover, that court reinforced the notion that civil commitment is a collateral consequence by using "collateral" in its discussion of *Padilla*: "Even if one could argue that the law was unclear, the Supreme Court has noted that when the law is unclear a criminal defense attorney must advise his client that the 'pending criminal charges may carry a risk of adverse [collateral] consequences.'" *Bauder*, 619 F.3d at 1275 (quoting *Padilla*, 130 S.Ct. at 1483) (alteration in *Bauder*).

certain offenses, the Supreme Court pointed out in *Padilla* that the only way for such defendants to avoid deportation is the "possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses." *Padilla*, 130 S. Ct. at 1478, 1480. Because deportation under these circumstances is nearly automatic, the Court concluded that deportation must be reviewed by counsel. *Id.* at 1482-83. As discussed above, however, future civil commitment under the Act is not nearly as certain. The Act provides discretion to the Government in choosing whom to certify for possible civil commitment. Unlike deportation, the district court ultimately determines whether a defendant is civilly committed. While the qualifying misconduct here is likely a predicate to consideration for civil commitment, once the Government decides to certify an inmate—Youngs or anyone else—for civil commitment, the Government will still have to establish by clear and convincing evidence that the inmate suffers from a condition that will make him sexually dangerous to others.[5] Thus, the likelihood of Youngs's civil commitment is uncertain, both at the time of his plea and at the completion of his period of incarceration.

We conclude, therefore, that the district court had no obligation to advise Youngs of the possibility of civil commitment prior to accepting his guilty plea.[6]

---

[5] While no formal statistical analysis has been done of the Act's civil commitment provisions, the Court of Appeals for the Fourth Circuit noted recently that although approximately 130 individuals have been certified for civil commitment since the Act was enacted, nearly two dozen of the certifications were subsequently dismissed by the Government because it determined that the individual did not meet the requirements of the Act. *United States v. Timms*, 664 F.3d 436, 440 n.3 & 452 (4th Cir. 2012).

[6] With this conclusion, we do not mean to discourage district courts from alerting defendants to the possibility of civil commitment during the plea allocution. To the contrary, we think district judges might well want to include the risks of potential post-sentence long-term civil commitment when allocuting defendants who plead guilty to offenses subjecting them to

**CONCLUSION**

The district court was not required to advise Youngs of the possibility of civil commitment under the Act before accepting his guilty plea. Therefore, we hold that Youngs's plea was knowing and voluntary and AFFIRM his conviction.

_____

that risk. While such a warning is not required, it is a potential consequence that could affect defendants' assessment of the costs and benefits of a guilty plea, and alerting defendants to it on the record could forestall later claims by defendants that they were misadvised by counsel concerning the relative costs and benefits of the plea.