14-4304-cr
United States v. Climico (Mendoza)

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of October, two thousand eighteen.

PRESENT:  DENNIS JACOBS,
          REENA RAGGI,
          DENNY CHIN,
                    Circuit Judges.

- - - - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,
          Appellee,

          -v.-                                    14-4304-cr

JUAN R. CLIMICO, aka Sealed Defendant, 1,
aka Manuel Climico, aka Juan Clinico, aka
Smiley, aka Juanito, MARCO CRUZ, aka Marco
Antonio Cruz Bello, aka Marcos Cruz, aka
Sealed Defendant, 2, aka Juan Bello, aka Freddo

1

Gomez, aka Burro, aka Mariguano, FIDEL DEJESUS, aka Sealed Defendant, 3, aka Duende, JORGE LEYVA, aka Sealed Defendant, 4, aka Cucha, JESUS MARTINEZ, aka Sealed Defendant, 5, aka Gafas, aka Tito, RUBI MARTINEZ, aka Sealed Defendant, 6, ARTURO MEDINA-LOPEZ, aka Sealed Defendant, 7, aka Arturo Medina, aka Marlboro, YASMIN OSUNA, aka Sealed Defendant, 9, aka La Mona, La Mono, MARCOS REYES, aka Sealed Defendant, 10, aka Marco Reyes, aka Cuervo, WILLIAM ROJAS, aka Sealed Defendant, 11, aka Willy, LUISBI SANTOS, aka Sealed Defendant, 12, aka Chorejas, aka Dumbo, aka Lulu,

        <u>Defendants,</u>

RUDY MENDOZA, aka Sealed Defendant, 8, aka Raul Perez, aka Pedro Mendoza,

        <u>Defendant-Appellant.</u>

- - - - - - - - - - - - - - - - -X

| | |
|---|---|
| **FOR APPELLANT:** | GLENN A. GARBER, Glenn Garber, P.C. (Ezra Spilke, Law Offices of Ezra Spilke; Sarah Kunstler, Law Offices of Sarah Kunstler, <u>on the brief</u>), New York, New York. |
| **FOR APPELLEE:** | AMY LESTER (Andrew Thomas, Karl Metzner, <u>on the brief</u>), Assistant United States Attorneys, <u>for</u> Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, New York. |

Appeal from a judgment of the United States District Court for the Southern District of New York (McMahon, Ch.J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Rudy Mendoza appeals from the judgment of the United States District Court for the Southern District of New York (McMahon, Ch.J.), sentencing him principally to 300 months' imprisonment after conviction for (1) participation in the "Vagos Gang" racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); (2) participation in a Vagos Gang-related conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C), and 846; (3) participation in a conspiracy to commit Hobbs Act armed robbery of individuals believed to be in possession of 20 kilograms of cocaine, in violation of 18 U.S.C. § 1959; (4) use of a firearm in connection with the robbery conspiracy, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (5) participation in a conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine, also in connection with the robbery conspiracy, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846. Mendoza challenges the sufficiency of the evidence; the jury instructions; trial counsel's effectiveness; the procedural reasonableness of his sentence; and the applicability of § 924(c) to Hobbs Act robbery conspiracy. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

1. A defendant challenging the sufficiency of the evidence underlying his conviction at trial "bears a heavy burden": We "view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." United States v. Coplan, 703 F.3d 46, 62 (2d Cir. 2012) (citations omitted). We must uphold the judgment if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). "The traditional deference accorded to a jury's verdict is especially important when reviewing a conviction for conspiracy

3

because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003) (internal quotation marks and ellipsis omitted).

Mendoza argues that the evidence was insufficient to prove his participation in the Vagos Gang racketeering conspiracy during the charged time frame (2009-2011). Viewed in the proper light, the evidence showed that Mendoza was associated with the Vagos Gang as early as 2001, was initiated in 2002, and was an active participant-member from that time and at essentially all subsequent times when not incarcerated[1]--including during the charged time frame. Mendoza was released from prison in March 2011 and quickly resumed his participation with the criminal organization. Mendoza sold cocaine to Juan Climico, the leader of the 110th Street subset of the Vagos Gang, on numerous occasions in 2011, as Mendoza admitted during his testimony. The jury heard recordings of numerous wiretapped telephone conversations between Mendoza and Climico between July 2011 and Mendoza's September 19 arrest, in which Mendoza inquired as to the activities of Climico's set of the Vagos Gang; made plans with Climico to extort and rob prostitution rings (a Vagos Gang activity in which Mendoza had been involved before his incarceration); offered and asked for guns; and discussed providing cocaine to Climico and other Vagos Gang members. In the calls, Mendoza referred to the Vagos Gang as "we" and spoke about wanting to increase its numbers; he also said that he wanted the Vagos Gang to have a large presence at an annual Mexican festival in September 2011 so that rival gangs would take notice. Mendoza's continued participation with the Vagos Gang was also evidenced by a reference to the 116th Street set of the Vagos Gang in the email address Mendoza associated with his 2011-activated Facebook page, and by several 2011 posts on that Facebook page. The evidence was more than sufficient to support the jury's finding that Mendoza agreed to

---

[1] Mendoza was incarcerated from approximately January 15, 2003, through March 9, 2004; August 15, 2005, through January 6, 2006; and March 13, 2009, through March 15, 2011.

(and did) participate in the Vagos Gang racketeering conspiracy during the charged time frame.[2]

As to the three counts relating to the Hobbs Act armed robbery conspiracy, Mendoza contends that the evidence was insufficient to prove that he had knowledge that the objective of the robbery conspiracy was to steal cocaine (as opposed to, e.g., cash) from an undercover agent posing as drug courier.[3] Three of Mendoza's co-conspirators (his uncle and cousins) had numerous conversations with the undercover agent about their plan to steal 20 to 25 kilograms of cocaine, and to split the cocaine 50/50 with the agent. Mendoza's

---

[2] Mendoza also argues that there was insufficient evidence of his connection to any two racketeering acts committed as part of the criminal enterprise. The RICO conspiracy count required proof that Mendoza agreed "with others (a) to conduct the affairs of an enterprise (b) through a pattern of racketeering." United States v. Basciano, 599 F.3d 184, 199 (2d Cir. 2010). "[A] conspirator charged with racketeering conspiracy need not commit or even agree to commit the predicate acts . . . ." United States v. Cain, 671 F.3d 271, 291 (2d Cir. 2012). "[T]he jury must consider the predicate acts charged against the defendant and his alleged co-conspirators to determine 'whether the charged predicate acts were, or were intended to be, committed as part of that conspiracy.'" Id. (quoting United States v. Yannotti, 541 F.3d 112, 129 n.11 (2d Cir. 2008)). In addition to the activities discussed on the 2011 wiretapped phone calls, the jury heard about a Vagos Gang-related attempted murder in June 2011. The jury could have easily found that Mendoza *or a co-conspirator* committed *or intended to commit* multiple, related acts of murder, extortion, robbery, and narcotics trafficking (the charged predicates) in connection with the enterprise.

[3] Mendoza appears to acknowledge that the evidence was sufficient to prove his intent to participate in a *robbery*. Indeed, Mendoza's recorded conversation with the undercover agent soon before the arrest demonstrated that Mendoza knew the plan was to commit a push-in robbery; comments on his Facebook page a few weeks prior to the robbery revealed that Mendoza had been looking for the opportunity to commit a robbery; and Mendoza and his co-conspirators were arrested with the tools (firearms and a rope) needed to carry out a robbery consistent with the previously made plans.

uncle told the agent that Mendoza knew what was going on, was ready to do "the job," "ready to do . . . what they have to do," and was one of his "trusted people." A674-78. An audio recording of Mendoza corroborates that he was an informed participant who knew quite well the robbery strategy previously discussed by the co-conspirators and the agent. Furthermore, Mendoza's involvement in cocaine trafficking during this period permits the inference that Mendoza agreed to commit this robbery in part because the target was cocaine. And a taped conversation during which Mendoza agreed to the manner of splitting proceeds can be reasonably interpreted to show that Mendoza knew the target of the robbery was drugs, not money.[4] The jury could have reasonably inferred from all of this evidence that Mendoza had been fully informed by his co-conspirators as to the armed robbery conspiracy, including that they planned to obtain 20 or more kilograms of cocaine. See United States v. MacPherson, 424 F.3d 183, 189-90 (2d Cir. 2005) ("The law . . . recognizes that the mens rea elements of knowledge and intent can often be proved through circumstantial evidence and the reasonable inferences drawn therefrom.").

**2.**     We review a challenge to jury instructions de novo and will reverse "only where the charge, viewed as a whole, 'either failed to inform the jury adequately of the law or misled the jury about the correct legal rule.'" United States v. Quinones, 511 F.3d 289, 314 (2d Cir. 2007) (quoting United States v. Ford, 435 F.3d 204, 209-10 (2d Cir. 2006)). Since Mendoza did not object to the challenged instruction before the submission of the case to the jury, we review for plain error.[5] See United States v. Botti, 711 F.3d 299, 308 (2d Cir. 2013).

---

[4] The agent used the word "they" and Mendoza's co-conspirator Jose Ramos used the phrase "our shit" when referring to the proceeds, A498-500; this language undermines Mendoza's contention that he might have thought the object of the robbery was money, rather than kilograms of cocaine.

[5] "Plain error review requires a defendant to demonstrate that '(1) there was error, (2) the error was plain, (3) the error prejudicially affected his substantial rights, and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings.'" United States v. Youngs, 687 F.3d 56, 59 (2d Cir. 2012) (quoting United States v. Flaherty, 295 F.3d 182, 195 (2d Cir. 2012)).

Mendoza asserts that the district court provided an incomplete instruction regarding the vertical (as opposed to horizontal) relatedness requirement of the predicate racketeering acts.[6] As to relatedness, the instruction was not, taken as a whole, misleading. The jury was instructed that racketeering acts must be "related to each other *by a common scheme or plan, such as furthering the ends or goals of the enterprise*." A1706. While it may be preferable to distinguish between horizontal and vertical relatedness, and to do so distinctly, this instruction sufficiently incorporated both requirements. See United States v. Daidone, 471 F.3d 371, 375 (2d Cir. 2006) (per curiam).

**3.** To prevail on a claim of ineffective assistance of counsel, a defendant must (1) "show that counsel's representation fell below an objective standard of reasonableness"; and (2) "affirmatively prove prejudice." Strickland v. Washington, 466 U.S. 668, 688, 693 (1984). "[A] petitioner cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit." Harrington v. United States, 689 F.3d 124, 130 (2d Cir. 2012).

---

[6] In passing, Mendoza also asserts that the district court erred in failing to instruct the jury as to the continuity requirement of the predicate acts. However, the substance of Mendoza's argument deals only with vertical relatedness, not continuity, so this does not suffice to preserve the issue. See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal. . . . Pursuant to this rule, we have held that . . . stating an issue without advancing an argument . . . did not suffice.").

In any event, there is no reasonable probability that an instruction as to continuity would have had any effect on the jury's verdict. See Cain, 671 F.3d at 277. In a case like this, involving a criminal, rather than lawful, enterprise, continuity is easily established. See H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 242-43 (1989) ("[T]he threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. Such associations include, but extend well beyond, those traditionally grouped under the phrase 'organized crime.'"). The wiretapped conversations between Mendoza and Climico demonstrated that continuing criminal activity was intended.

7

Mendoza cites trial counsel's failure to challenge the racketeering acts jury instruction discussed above. The ineffectiveness claim fails because (inter alia) there was no error.[7] See United States v. Frampton, 382 F.3d 213, 222 n.8 (2d Cir. 2004) ("Having found no error in [the district court's jury] instruction, we hold [defendant's ineffective assistance] claim must fail.").

4.      We review the procedural reasonableness of a sentence under a "deferential abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 41 (2007). This means that a district court's legal application of the Sentencing Guidelines is reviewed de novo and its underlying factual findings are reviewed for clear error. United States v. Cossey, 632 F.3d 82, 86 (2d Cir. 2011).

Mendoza challenges the district court's application of a two-point enhancement under U.S.S.G. § 3C1.1 for obstruction of justice. Mendoza fails to show procedural error. The district court applied the enhancement because it determined that Mendoza willfully had perjured himself on material issues at trial. The district court found that Mendoza "lied and lied and lied" about his knowing participation in the armed robbery conspiracy, as evidenced by the different version of events revealed by Mendoza's own words on the contemporaneous audio recording and by the undercover agent's testimony. This finding was not clearly erroneous and is a sufficient basis for applying the enhancement. See United States v. Salim, 549 F.3d 67, 73 (2d Cir. 2008); United States v. Lincecum, 220 F.3d 77, 80-81 (2d Cir. 2000) (per curiam).

5.      Mendoza was convicted under 18 U.S.C. § 924(c) for use of a firearm in connection with a "crime of violence"; his underlying offense was conspiracy to commit Hobbs Act robbery under 18 U.S.C. § 1951. He argues that conspiracy

---

[7] Although "in most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance," Massaro v. United States, 538 U.S. 500, 504 (2003), we may resolve Mendoza's claim on direct appeal because no additional fact-finding is necessary and the claim can be resolved on the current record "beyond any doubt," United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004) (quoting United States v. Khedr, 343 F.3d 96, 100 (2d Cir. 2003)).

to commit Hobbs Act robbery is not a "crime of violence" under 18 U.S.C. § 924(c)(3).

We held in United States v. Hill, 890 F.3d 51 (2d Cir. 2018), that Hobbs Act robbery is categorically a crime of violence under § 924(c)(3)(A). Conspiracy to commit such an offense, "by its 'very nature' presents a substantial risk of physical force, so as also to be a violent crime under" the subsection's "risk-of-force" clause, § 924(c)(3)(B). United States v. Barrett, 903 F.3d 166, 175 (2d Cir. 2018). Mendoza argues that Barrett and Hill were wrongly decided, and that Barrett's categorical application of 18 U.S.C. § 924(c)(3)(A) and § 924(c)(3)(B) is dubious in light of the Supreme Court's decisions in Johnson v. United States, 135 S. Ct. 2551 (2015), and Sessions v. Dimaya, 138 S. Ct. 1204 (2018). Nonetheless, Barrett is the law of this Circuit. Our precedent thus establishes that Mendoza's offense is categorically a "crime of violence" under § 924(c).

Mendoza's offense also qualifies as a crime of violence under a conduct-specific application of 18 U.S.C. § 924(c)(3)(B). This Court has held that § 924(c)(3)(B) "can be applied to a defendant's case-specific conduct, with a jury making the requisite findings about the nature of the predicate offense and the attending risk of physical force being used in its commission. Such a conduct-specific approach avoids . . . due process vagueness concerns identified in Dimaya and Johnson." Barrett, 903 F.3d at 178. While a conduct-specific § 924(c)(3)(B) determination was not made by the jury here, any error in failing to require the jury to make such a finding was harmless beyond a reasonable doubt. Mendoza was convicted of a conspiracy to steal 20 to 25 kilograms of cocaine through the use of physical force, including forcing open the door at the robbery location and hitting, tying up, and pistol whipping the targets of the robbery. Indeed, the conspirators brought with them firearms and rope. Therefore, because the predicate offense of Mendoza's conviction entailed a "plan[] to use physical force," the "evidence can only support a finding that the charged conspiracy, by its nature, involved a substantial risk of the use of physical force." Id. at 184 (emphasis in original).

Accordingly, the district court did not err in applying the "crime of violence" sentencing enhancement to Mendoza's Hobbs Act robbery conspiracy conviction.

For the foregoing reasons, and finding no merit in Mendoza's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK