21-1933-cr
United States of America v. Okparaeke

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of March, two thousand twenty-three.

PRESENT:
> PIERRE N. LEVAL,
> DENNY CHIN,
> MYRNA PÉREZ,
> > *Circuit Judges.*

---

United States of America,

> *Appellee*,

> v.                                                         **21-1933**

Chukwuemeka Okparaeke, AKA Emeka,

> *Defendant-Appellant.*

---

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | Chukwuemeka Okparaeke, pro se, Waymart, PA (Georgia J. Hinde, standby counsel, New York, NY). |
| **FOR APPELLEE:** | Gillian Grossman, Olga I. Zverovich, Hagan Scotten, Assistant United States Attorneys, of counsel, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Román, Nelson S., *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Appellant Chukwuemeka Okparaeke, proceeding pro se with the assistance of standby counsel, appeals the district court's denial of his motion to withdraw his guilty plea as to one of the counts on the basis that he is legally innocent; he also argues that he should have been permitted to withdraw from his plea agreement because the district court failed to comply with Federal Rule of Criminal Procedure 11(c). Okparaeke pleaded guilty to three counts stemming in part from his online sales of illegal drugs—including, as relevant here, a drug known as U-47700—and in part from false statements Okparaeke made to federal agents about his proceeds from the sales. The district court denied Okparaeke's motion, which was filed seven months after his change of plea hearing, because he had not shown a "fair and just reason" for withdrawing his plea. *United States v. Okparaeke*, No. 17 CR 225 (NSR), 2021 WL 3038672, at *2 (S.D.N.Y. July 16, 2021) ("Rule 11(d)(2)(B) provides in relevant part, that a defendant may withdraw a plea of guilty after the court accepts the plea but before it imposes a sentence provided the defendant can demonstrate 'a fair and just reason' for withdrawing the plea."). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

I.    **Motion to Withdraw the Guilty Plea**

We review a "district court's denial of a motion to withdraw a guilty plea for abuse of discretion," examining "findings of fact made in connection with such a denial for clear error and questions of law de novo." *United States v. Albarran*, 943 F.3d 106, 117 (2d Cir. 2019). "A district court abuses its discretion when its decision incorporates an error of law, rests on a clearly

erroneous factual finding, or cannot be located within the range of permissible decisions." *United States v. Nieves*, 58 F.4th 623, 632 (2d Cir. 2023) (internal quotation marks omitted).

A defendant who seeks to withdraw a plea of guilty before sentencing must "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). One factor considered in reviewing such a claim is the voluntariness of the plea. *Albarran*, 943 F.3d at 117. Other factors may include

> (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea.

*Id.* at 117–18. "The defendant bears the burden of showing valid grounds for withdrawal," *id.* at 118 (internal quotation marks and alteration omitted), and the government need not demonstrate prejudice unless the defendant has met that burden, *United States v. Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011).

The standard for withdrawing a plea is "stringent" because "allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *Albarran*, 943 F.3d at 118 (internal quotation marks omitted). Therefore, "a defendant's reevaluation of the government's case against him does not justify withdrawal of a plea." *Id.* (internal quotation marks omitted).

Count One charged Okparaeke with distribution and possession with intent to distribute the drug U-47700 as an analogue of the controlled substance AH-7921. Okparaeke's challenges to his guilty plea on Count One turn on three different assertions of legal innocence. As we

3

explain below, because each of those arguments fails, the district court did not abuse its discretion in denying Okparaeke's motion to withdraw his guilty plea.

We note, preliminarily, that at least two factors weigh against allowing Okparaeke to withdraw his guilty plea. First, his plea-withdrawal motion was filed approximately seven months after he pleaded guilty. *See Albarran*, 943 F.3d at 123 ("The four-month lapse between his guilty plea and his motion to withdraw the plea further supports the District Court's exercise of discretion in denying Albarran's request."). Second, Okparaeke has not suggested that his guilty plea was involuntary.

### a. The Drug Enforcement Administration's Authority to Schedule AH-7921

Okparaeke argues that he is legally innocent of Count One because the Drug Enforcement Administration ("DEA") improperly scheduled additional compounds related to AH-7921, the controlled substance for which U-47700 is an analogue. Specifically, he claims that the DEA lacked the authority to schedule the isomers, esters, ethers, and salts of AH-7921 as controlled substances because the United Nations ("UN") directive that led to the scheduling of AH-7921 did not specifically mention isomers, esters, ethers, and salts.[1] Okparaeke argues that because the DEA lacked this authority, AH-7921 was not lawfully scheduled as a controlled substance and, accordingly, he is legally innocent of distributing a controlled substance analogue of AH-7921.

Okparaeke cites no authority for the proposition that the DEA's scheduling authority was somehow limited by the UN directive. The statutes and regulations that comprise the schedules of controlled substances plainly state that the isomers, esters, ethers, and salts of controlled substances are included in those schedules. *See* 21 U.S.C. § 812(c); 21 C.F.R. § 1308.11(b).

---

[1] Under 21 U.S.C. § 811(d), if an international treaty requires a substance to be controlled, the DEA must issue an order adding the substance to an appropriate schedule. In 2015, a United Nations commission added AH-7921 to the Single Convention on Narcotic Drugs, which triggered the DEA's obligation to add AH-7921 to a schedule.

Furthermore, Okparaeke did not plead guilty to distributing an isomer, ester, ether, or salt of AH-7921, but rather U-47700, an analogue of AH-7921. Even if he were correct that the DEA lacked authority to schedule the isomers, esters, ethers, and salts of AH-7921, that would not affect either the propriety of its having listed AH-7921 or his plea to distributing an analogue of AH-7921. We conclude that he has not shown his entitlement to relief from his plea on this ground.

### b. Difference Between the UN and DEA's AH-7921

Relatedly, the district court also did not err in rejecting Okparaeke's argument that there are differences between the version of AH-7921 referenced by the UN and the version scheduled by the DEA. In other words, Okparaeke contends that the DEA exceeded its authority by scheduling a substance not controlled by the relevant treaty. Based on evidence regarding the scientific community's usage of the chemical name and the lack of evidence to the contrary, the district court determined that the UN's reference to AH-7921 was meant to be a shorthand for the drug the DEA scheduled. *See Okparaeke*, 2021 WL 3038672, at *3.

Okparaeke does not meaningfully engage with the district court's factual findings, and we see no clear error that would disturb the district court's reasoning. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012). Given the dueling expert testimony from both parties as to the similarity of the chemical structures of the various versions of AH-7921, the district court did not clearly err in crediting the government's expert and declining to find that Okparaeke had shown he was legally innocent.

5

## c. Controlled Substance vs. Controlled Substance Analogue[2]

Okparaeke's argument that he is legally innocent because Count One charged him with distribution of a controlled substance analogue and U-47700 is a controlled substance rather than an analogue is unavailing. As the government argues, even if U-47700 were a controlled substance rather than an analogue, there is no question that the district court had a factual basis for accepting Okparaeke's guilty plea. Count One charged him with violations of 21 U.S.C. §§ 813 and 841. Section 841 criminalizes, among other things, the distribution of and possession with intent to distribute controlled substances. Section 813 brings controlled substance analogues under the purview of § 841 by treating "controlled substance analogue[s]" as "controlled substance[s] in schedule I." 21 U.S.C. § 813(a). If U-47700 were in fact a controlled substance, Okparaeke's guilty plea would still have a factual basis[3]—rather, it means there would have been no need for the government to prove the additional elements required under § 813 for analogues of controlled substances.

---

[2] Okparaeke arguably did not properly bring this issue before the district court, as he raised it only in his post-sentencing motion and the district court declined to consider it. Nonetheless, as we explain below, this issue is without merit.

[3] In prosecutions involving controlled substance analogues, the knowledge requirement "can be established by evidence that the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue." *McFadden v. United States*, 576 U.S. 186, 194 (2015). Analogues are defined by their features, as a substance "the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II"; "which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than" the effect of a controlled substance in schedule I or II; or which is represented or intended to have that effect with respect to a particular person. 21 U.S.C. § 802(32)(A). "A defendant who possesses a substance with knowledge of those features knows all of the facts that make his conduct illegal . . . . A defendant need not know of the existence of the Analogue Act to know that he was dealing with 'a controlled substance.'" *McFadden*, 576 U.S. at 194–95. Here, Okparaeke proffered during the change-of-plea hearing that his "distribution was knowing and intentional and that he understood the substance was substantially similar to a Schedule I or II controlled substance," and that he "understood that people wanted to buy [the substance] and consume it because it got them high in a manner similar to opioids[.]" App'x. 81–82.

## II.    Withdrawal from the Plea Agreement

Okparaeke also seeks to withdraw from the plea *agreement*.   The parties do not dispute that Okparaeke failed to raise this issue before the district court but disagree as to whether we should review for plain error.   Regardless of the standard of review, Okparaeke has not shown sufficient reason to withdraw from his plea agreement.   His main argument that the district court did not dismiss the pending charges against him is belied by the record, which indicates that the district court did precisely that.   The secondary basis of his request is that the district court itself did not explicitly state on the record that it was accepting the plea agreement, ostensibly in violation of Fed. R. Crim. P. 11(c)(4).   For a plea agreement, such as this one, that provides that the government will "not bring, or will move to dismiss, other charges," Fed. R. Crim. P. 11(c)(1)(A), Rule 11(c)(4) requires the court to inform the defendant that "the agreed disposition will be included in the judgment."   *Id*. at 11(c)(4).   Again, the district court stated on the record that it was dismissing the pending charges, which the judgment confirms.   To the extent that the district court could have been more explicit, "[a] variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights."   Fed. R. Crim. P. 11(h); *see United States v. Youngs*, 687 F.3d 56, 59 (2d Cir. 2012).   As Okparaeke received the entire benefit he expected to receive from his plea agreement, the fact that the district court did not explicitly accept the plea agreement on the record did not affect his substantial rights.

*  *  *

We have considered Okparaeke's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7