**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

MAURICE XAVIER HOLLINS,

*Defendant-Appellant.*

No. 21-10320

D.C. No.
3:20-cr-08083-
DLR-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted April 18, 2023
Phoenix, Arizona

Filed June 20, 2023

Before: John B. Owens and Bridget S. Bade, Circuit
Judges, and M. Miller Baker,* International Trade Judge.

Opinion by Judge Owens

---

*The Honorable M. Miller Baker, Judge for the United States Court of
International Trade, sitting by designation.

## SUMMARY**

### Criminal Law

Dismissing Maurice Hollins's appeal from his conviction for abusive sexual contact of a child under age twelve, the panel held that Hollins's guilty plea was knowing and voluntary, and the appellate waiver included in his plea agreement was therefore in force.

The panel held that the district court's failure to inform Hollins that his conviction could potentially lead to subsequent civil commitment, community notification, and geographic restrictions on his residence and workplace did not render his guilty plea unknowing and involuntary because these three post-release effects were collateral rather than direct consequences of the plea.

Following *United States v. Delgado-Ramos*, 635 F.3d 1237 (9th Cir. 2011) (per curiam), the panel held that *Padilla v. Kentucky*, 559 U.S. 356 (2010), holding that the Sixth Amendment requires defense counsel to advise a client whether a guilty plea carries a risk of deportation, does not require a court, under Federal Rule of Criminal Procedure 11, to advise a defendant about possible civil commitment, geographic restrictions, and community notification consequences of a guilty plea.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Donna L. Elm (argued), Law Practice of Donna Elm, Cottonwood, Arizona, for Defendant-Appellant.

Jason T. Crowley (argued), Assistant United States Attorney; Krissa M. Lanham, Appellate Division Chief; Gary M. Restaino, United States Attorney; Office of the United States Attorney, Phoenix, Arizona; for Plaintiff-Appellee.

**OPINION**

OWENS, Circuit Judge:

Defendant-Appellant Maurice Hollins pleaded guilty to abusive sexual contact of a child under age twelve in violation of 18 U.S.C. §§ 1152, 2244(a)(5), and 2246(3). He now argues that his plea was not knowing and voluntary, and therefore his appeal waiver is invalid, because the district court failed to inform him that his conviction could potentially lead to subsequent civil commitment, community notification, and geographic restrictions on his residence and workplace. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**I.     BACKGROUND**

Hollins, a non-Indian resident of Arizona, had unlawful sexual contact with an eight-year-old member of the Navajo Nation Indian Tribe while within the confines of the Navajo Nation. An indictment charged Hollins with three counts, and he agreed to plead guilty to Count Two, abusive sexual

contact of a child under age twelve. Pursuant to the plea agreement, Counts One and Three—both charging Hollins with aggravated sexual abuse of a child under age twelve—were dismissed and the parties stipulated to a sentencing range of thirteen to twenty-five years' imprisonment. The agreement contained an appellate waiver. It also outlined the elements of the offense, possible criminal penalties, and a condition requiring Hollins to register as a sex offender in accordance with tribal, state, and federal law. The plea agreement did not mention that his conviction could possibly lead to civil commitment or Arizona-specific geographic restrictions and community notification.

At a change of plea hearing, the magistrate judge reviewed the plea agreement, advised Hollins of these same criminal penalties, and informed him of his registration obligations. The magistrate judge did not mention the possibility of civil commitment or Arizona-specific geographic restrictions and community notification. At a subsequent hearing, the district judge accepted the plea and sentenced Hollins to 270 months in custody. Hollins timely appealed.

## II.    Discussion

### A.  Standard of Review

We review de novo the validity of a waiver of the right to appeal and the voluntariness of a guilty plea. *United States v. Littlejohn*, 224 F.3d 960, 964 (9th Cir. 2000).[1]

---

[1] Where, as here, a defendant failed to object to an error under Federal Rule of Criminal Procedure 11 ("Rule 11"), we conduct plain error review. *United States v. Vonn*, 535 U.S. 55, 59 (2002). Because there

## B. Appellate Waiver

We enforce an appellate waiver when (1) its language clearly and unambiguously encompasses the defendant's right to appeal on the grounds raised, and (2) it was knowingly and voluntarily made. *United States v. Wells*, 29 F.4th 580, 583 (9th Cir. 2022).

Hollins does not contest that the plea agreement included an appellate waiver that clearly and unambiguously encompassed the right to challenge the validity of the plea. However, waivers must "stand or fall with the agreement of which they are a part," so we must first decide Hollins' claim that the plea itself was not knowingly and voluntarily entered under Rule 11 to determine whether the appellate waiver is enforceable. *United States v. Portillo-Cano*, 192 F.3d 1246, 1250 (9th Cir. 1999) (citation omitted); *see also United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) ("An appeal waiver will not apply if . . . a defendant's guilty plea failed to comply with Fed. R. Crim. P. 11[.]").[2]

## C. Application of Rule 11 to Collateral Consequences

"[C]ompliance with Rule 11 is the means by which the court is assured that the defendant's guilty plea is voluntarily and knowingly made." *Portillo-Cano*, 192 F.3d at 1250. As required by the rule, the magistrate judge addressed Hollins

---

was no error, we do not address the other elements of the plain error analysis.

[2] No other exception to enforcing an appellate waiver applies in this case. Hollins does not challenge his sentence as illegal nor argue that the sentencing judge misinformed him about his right to appeal or levied a sentence that did not comport with the plea agreement's terms. *See Bibler*, 495 F.3d at 624.

in open court to ensure his plea was voluntary. *See* Fed. R. Crim. P. 11(b)(2). The magistrate judge placed him under oath and informed him of the rights he waived by pleading guilty, and that he would be subject to lifetime supervised release and sex offender registration. *See id.* at 11(b)(1). Hollins does not dispute this. He contends, however, that his plea is invalid because the court failed to inform him of three post-release "consequences" of his guilty plea: (1) the possibility of civil commitment under state or federal law, (2) geographic restrictions imposed against sex offenders by state law, and (3) community notification required under state law. He is incorrect.

Courts have long distinguished direct and collateral consequences in the context of guilty pleas. *See Littlejohn*, 224 F.3d at 965 (summarizing distinctions and providing examples). A direct consequence is one that "represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Torrey v. Estelle*, 842 F.2d 234, 236 (9th Cir. 1988) (citation omitted). But "where the consequence is contingent upon action taken by an individual or individuals other [than] the sentencing court— such as another governmental agency or the defendant himself—the consequence is generally 'collateral.'" *Littlejohn*, 224 F.3d at 965. "A plea of guilty is voluntary only if it is entered by one fully aware of the *direct* consequences of his plea." *Torrey*, 842 F.2d at 235 (internal quotation marks and citations omitted). Thus, before accepting a guilty plea, a court must inform a defendant of the direct consequences, but not the collateral ones. *Id.*

Hollins' argument fails because it relies on three textbook examples of collateral consequences. First, as the Second Circuit has explained, civil commitment is not a definite, immediate, or largely automatic consequence of

conviction. *United States v. Youngs*, 687 F.3d 56, 61 (2d Cir. 2012) ("Because the possibility of civil commitment will only arise at the end of [the defendant's] twenty-year prison sentence and then will occur only if the Government meets its high burden under the Act, civil commitment is not definite, immediate, and automatic, and is therefore not a 'direct' consequence of a guilty plea as defined by this Court."). Eligible offenders *may* be committed after conviction of a sex offense, but that is not always the case. *See id.* For example, under both the federal and state statutes at issue, Hollins would be entitled to a hearing to determine whether commitment is authorized and provided with the assistance of counsel. 18 U.S.C. §§ 4247(d), 4248(c)–(d); Ariz. Rev. Stat. §§ 36-3704(C) to -3706. And in each instance, the government must prove that he suffers from a serious mental illness that would make him likely to engage in further sexual violence. *See* 18 U.S.C. § 4247(a)(5)–(6); Ariz. Rev. Stat. § 36-3701(7). Thus, civil commitment does not automatically flow from conviction.

Hollins emphasizes that he is likely to meet the requirements for commitment due to his serious mental illness. Yet even if that prediction comes true, it does not change our analysis because commitment is still uncertain at the time a defendant enters his plea. *See Youngs*, 687 F.3d at 60–61 n.2 (explaining that, notwithstanding the likelihood of commitment, what is relevant is that the commitment hearing involves the resolution of multiple factual and legal issues at the time commitment is sought).

Further, both statutes place the discretion to pursue civil commitment in a non-judicial actor. Under the federal statute, the process may be initiated by the Attorney General or the Director of the Bureau of Prisons. 18 U.S.C. § 4248(a). Under the Arizona statute, the power lies

with the county attorney. Ariz. Rev. Stat. § 36-3704(A). Thus, the discretionary decision to pursue civil commitment of a sex offender is outside the power of the sentencing judge, suggesting the consequence is collateral. *See Littlejohn*, 224 F.3d at 965.

Accordingly, like every other circuit to address this issue, we hold that possible civil commitment is a collateral consequence of conviction. *See Steele v. Murphy*, 365 F.3d 14, 17–18 (1st Cir. 2004) (explaining that civil commitment was collateral because there were "many steps," including a "full evidentiary hearing," between the defendant's conviction and ultimate commitment); *Youngs*, 687 F.3d at 60 ("Civil commitment . . . is not 'definite, immediate, and largely automatic.'" (citation omitted)); *Cuthrell v. Dir., Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir. 1973) (determining that, although a defendant "*might*, as a result of the judgment in an entirely separate *civil* proceeding, in which he would be afforded counsel and all due process rights, . . . be committed," the consequence was collateral); *George v. Black*, 732 F.2d 108, 110–11 (8th Cir. 1984) (holding that civil commitment did not "flow automatically from the plea," and thus was collateral, even where commitment proceedings were a mandatory result of conviction).

The possible state-law geographic restrictions and community notification requirements are equally collateral. None of the consequences of Hollins' *federal* conviction imposed under Arizona *state* law can be characterized as definite, immediate, or automatic. Hollins need not register as a sex offender until his release from prison. And it is not certain that Hollins will be released to Arizona at the end of his 270-month sentence or that he will remain there long enough to trigger the registration requirement, so it is

possible that Hollins will not be subject to Arizona's sex offender restrictions. *See* 18 U.S.C. § 3624(d)(3) (prisoner may be released and transported to "the place of the prisoner's conviction, to the prisoner's bona fide residence within the United States, or to such other place within the United States as may be authorized by the Director"). As we noted above, that Hollins is *likely* to live in Arizona after his sentence does not render Arizona's specific sex offender restrictions a direct consequence of Hollins' federal conviction.[3]

Because each consequence Hollins identifies is collateral, the district court did not err by failing to advise him of them.

### D. Effect of *Padilla* on the District Court's Rule 11 Obligations

According to Hollins, *Padilla v. Kentucky*, 559 U.S. 356 (2010), a Sixth Amendment ineffective assistance of counsel case, radically changed the longstanding Rule 11 direct-collateral consequences doctrine. He contends that *Padilla* requires *a court*, under Rule 11, to advise a defendant about the possible effects of pleading guilty discussed *supra*, and that the failure to discuss these possibilities requires us to invalidate his guilty plea. But, as we have held for more than a decade, *Padilla* is not so sweeping.

In *Padilla*, the Supreme Court held that the Sixth Amendment requires defense counsel to advise a client

---

[3] Though not required to under Rule 11, the magistrate judge advised Hollins that he would need to register as a sex offender "in accordance with tribal, state, and federal law." The district court had no duty to advise him of the minutiae of state law that may apply to him in the future.

whether a guilty plea carries a risk of deportation. *Id.* at 374. In so holding, the Court repeatedly stressed that its decision regarding the duties of *counsel* was based on the "unique nature of deportation." *Id.* at 365; *see also id.* ("We, however, have never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance [of counsel]' required under *Strickland* [*v. Washington*, 466 U.S. 668, 689 (1984)].").

We analyzed *Padilla*'s impact on Rule 11 in *United States v. Delgado-Ramos*, 635 F.3d 1237 (9th Cir. 2011) (per curiam). Considering whether *Padilla* requires a court to inform a defendant of adverse immigration consequences before accepting a guilty plea, we held that "[w]hile *Padilla*'s holding is directly applicable to our Sixth Amendment analysis . . . it sheds no light on the obligations a district court may have under Rule 11 and due process." *Id.* at 1241.[4] And two years after we decided *Delgado-Ramos*, the Supreme Court made clear that *Padilla* "did not eschew the direct-collateral divide across the board," but only held that "the collateral versus direct distinction was ill-suited to dispose of Padilla's [Sixth Amendment] claim" because of "the special nature of deportation." *Chaidez v. United States*, 568 U.S. 342, 355 (2013) (cleaned up).

---

[4] *See also Youngs*, 687 F.3d at 62 (following *Delgado-Ramos* and holding that *Padilla* did not implicate the court's duties under the Fifth Amendment or Rule 11 because they are more limited than those of counsel under the Sixth Amendment); *United States v. Nicholson*, 676 F.3d 376, 381 n.3 (4th Cir. 2012) (noting that the Court in *Padilla* "specifically declined to address 'how to distinguish between direct and collateral consequences'" (citation omitted)).

Hollins has not identified any intervening decision by this court or the Supreme Court that has undermined our reasoning in *Delgado-Ramos*, so we cannot ignore that holding or our prior precedent relying on the direct-collateral distinction. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding that a three-judge panel may depart from circuit precedent only where a higher court holding is "clearly irreconcilable").

And even if we could disregard *Delgado-Ramos*' clear holding, we cannot ignore *Padilla*'s emphasis on the unique nature of immigration consequences—that deportation is a particularly severe penalty that flows virtually automatically from conviction. *Padilla*, 559 U.S. at 365–66. Those concerns do not apply to the consequences of which Hollins complains. Geographic restrictions and community notification are simply not on par with the severity of deportation. Civil commitment, while comparatively more severe, is not an automatic consequence of conviction; a sex offense conviction is not itself sufficient to render a defendant subject to commitment. *See Youngs*, 687 F.3d at 63 (rejecting an identical argument and finding that because the government must choose to initiate commitment proceedings and then meet its burden of proof, "the likelihood of [the defendant's] civil commitment is uncertain, both at the time of his plea and at the completion of his period of incarceration").

## III.  Conclusion

We reaffirm that Rule 11 requires a court to inform a defendant of the direct consequences of his guilty plea, but not those that are merely collateral. *See Delgado-Ramos*, 635 F.3d at 1239. *Padilla* did not change this. *See id.* at 1241. We further hold that possible civil commitment,

geographic restrictions, and community notification were collateral consequences of Hollins' guilty plea to a sex offense. Because the district court had no duty to inform Hollins of these specific consequences, his plea was knowing and voluntary. Thus, his appellate waiver is in force, and we therefore dismiss his appeal.

**APPEAL DISMISSED.**